UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYASIA N. ASHLEY, *Administratrix of the* ESTATE OF WILLIE LEE GARY,<br><br>Plaintiff,<br><br>v.<br><br>ERIC BRADLEY, et. al.,<br><br>Defendants. | CIVIL ACTION NO. 3:23-CV-01594<br><br>(MEHALCHICK, J.) |

### MEMORANDUM

Presently before the Court is a motion to dismiss brought by Defendants United States of America ("the Government"), Eric Bradley ("Bradley"), Corrections Officer Orner ("Orner"), Rick Brill ("Brill"), Ryan Swartzfager ("Swartzfager"), Jeffrey Connor ("Connor"), Ronald Atcavage ("Atcavage"), Jeffrey Baronski ("Baronski"), Craig Price ("Price"), James Grizzanti ("Grizzanti"), Michael Young ("Young"), and Eric Decker ("Decker") (collectively, "Defendants"). (Doc. 46). On September 26, 2023, Plaintiff Lyasia N. Ashley ("Ashley"), Administratrix of the Estate of Willie Lee Gary ("Decedent"), initiated this action by filing a complaint asserting *Bivens* and Federal Tort Claims Act ("FTCA") claims. (Doc. 1). Ashley filed the operative amended complaint on August 20, 2024. (Doc. 30). For the following reasons, Defendants' motion to dismiss shall be **GRANTED**. (Doc. 46).

I. **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the amended complaint. (Doc. 30). At all times relevant to the present action, Decedent was incarcerated at the Federal Correctional Institute at Canaan ("the prison"). (Doc. 30, ¶¶ 9, 25). At approximately 7:25 AM on

September 28, 2021, Decedent and his cellmate had a physical altercation, which left Decedent injured and incoherent. (Doc, 30, ¶¶ 26-27). During the altercation, the alarm in Decedent's cell went off and a corrections officer—one of the individual Defendants—arrived to find the cell empty. (Doc. 30, ¶ 28). The corrections officer did not engage in attempts to locate Decedent or his cellmate to see if medical attention was required. (Doc. 30, ¶ 29). At around 7:32 AM, the Decedent and other incarcerated individuals were directed by other inmates into cell 225, where an inmate blocked the door and prevented Decedent from leaving. (Doc. 30, ¶¶ 30-31). In the blockaded cell, Decedent was again assaulted. (Doc. 30, ¶ 32). Defendants Baronski, Price, Swartzfager, Atcavage, Decker, Connor, Young, Grizzanti, Brill and/or Orner did not stop the fighting, despite having access to video surveillance showing the danger to Decedent. (Doc. 30, ¶ 33).

At some point between 7:32 AM and 8:02 AM, Decedent collapsed in cell 225 due to his injuries and required medical attention. (Doc 30, ¶ 35). None of the Defendants came to provide aid or protection or to prevent further injuries until 10:30 AM, despite their access to the live video footage showing the assaults. (Doc. 30, ¶ 36). None of the Defendants checked on any prisoners after 7:27 AM or "conduct[ed] a round of the block at the time of the alarm to make sure all inmates were safe." (Doc. 30, ¶¶ 37-39). In sum, Defendants failed to adequately respond to the alarms or the surveillance video showing a blockaded cell and injured Decedent. (Doc. 30, ¶¶ 38-45). "At 10:30 [AM] Defendants Baronski, Price, Swartzfager, Atcavage, Decker, Connor, Young, Grizzanti, Brill and/or Orner were conducting block checks and discovered Decedent dead" in cell 225, the blockaded cell. (Doc. 30, ¶ 46). It is alleged that Decedent suffered cardiac arrest sometime between 7:30 and 10:30 AM. (Doc. 30, ¶ 48). Decedent was found with severe wounds indicating he had been beaten

by at least one other inmate and it was determined that he died from "cardiopulmonary arrest subsequent to a physical assault." (Doc. 30, ¶¶ 49-50).

On September 26, 2023, Ashley filed her complaint. (Doc. 1). In August 2024, Ashley filed a claim for administrative remedies with the Bureau of Prisons ("BOP") that is still being reviewed. (Doc. 53-1). On August 20, 2024, Ashley filed her amended complaint. (Doc. 30). On December 2, 2024, Defendants filed a motion to dismiss. (Doc. 46). Defendants filed a brief in support of their motion to dismiss and accompanying exhibits on December 30, 2024. (Doc. 51). On January 13, 2025, Ashley filed her brief in opposition and accompanying exhibits. (Doc. 53). On January 27, 2025, Defendants filed a reply brief. (Doc. 54). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition.

**II.    LEGAL STANDARD FOR 12(B)(6) MOTION TO DISMISS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

3

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

**III.    DISCUSSION**

    A.    *BIVENS* CLAIMS

In Counts One through Four, Bradley asserts *Bivens* claims against Defendants, alleging violations of Decedent's Eighth Amendment rights for failure to protect and failure to provide medical treatment for Decedent's serious medical need. (Doc. 30). Defendants argue that Ashley's claims present new contexts and special factors weighing against recognizing a *Bivens* claim. (Doc. 51, at 16-39). Ashley responds that her claims should be cognizable under *Bivens*, arguing that her claims do not present a new context and a special factors analysis is thus not warranted. (Doc. 53, at 5-7). In the amended complaint, Ashley alleges that Defendants failed to protect Decedent from attacks by his cellmate and other inmates on September 28, 2021 which resulted in injuries that caused Decedent's death. (Doc. 30, at 4-7). Specifically, Ashley alleges staff members at the prison were deliberately indifferent to Decedent's safety needs by failing to protect him and "to have his serious medical needs treated." (Doc. 30, ¶ 63). Ashley alleges that Defendants failed to adequately respond to alarms with a round of the cellblock or respond to video surveillance showing Decedent unresponsive. (Doc. 30, ¶¶ 38-45). According to Ashley, had Defendants properly responded, Decedent would have been found and provided medical attention before his death. (Doc. 30, ¶ 40). Thus, Ashley contends that her claim is a valid *Bivens* claim. (Doc. 53, at 5-7).

Civil rights claims aimed at federal actors must be pursued under the case of *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (providing for a cause of action against federal agents for certain civil rights violations). A *Bivens* action must be directed at individual defendants. It cannot be aimed at the federal government on a

vicariously liability theory. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). In *Bivens*, the Supreme Court of the United States recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. *See Bivens*, 403 U.S. at 397. More than 50 years have passed since *Bivens* was decided in June 1971. In that time, the Court has extended the *Bivens* remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 18-23 (1980).

The Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) sets forth a two-part test for determining whether a prospective *Bivens* claim may proceed. First, courts must ascertain whether the case presents a "new context." *See Abbasi*, 137 S. Ct. at 1859. If the case differs "in a meaningful way" from previous *Bivens* cases decided by the Supreme Court, "then the context is new." *Abbasi*, 137 S. Ct. at 1859. Further, the meaning of "new context" is "broad." *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *See Hernandez*, 140 S. Ct. at 743. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *See Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Abbasi*, 137 S. Ct. at 1858). If a court concludes that "even a single reason" exists to

6

pause "before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *See Egbert*, 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. at 743) (internal quotation marks omitted).

The Court's decision in *Egbert* reemphasizes that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *See Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 137 S. Ct. at 1857; *Hernandez*, 140 S. Ct. at 742-43). *Egbert* clarified that the two-step process laid out in *Abbasi* "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *See Egbert*, 142 S. Ct. at 1803. In other words, if there is "any rational reason (even one) to think that Congress is better suited" to determine the propriety of a cause of action, then a *Bivens* action cannot proceed. *See Egbert*, 142 S. Ct. at 1805. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even potentially yes, the plaintiff cannot recover under *Bivens*. *See Egbert*, 142 S. Ct. at 1805 (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)). Mindful of *Egbert's* recent clarification and emphasis on the presence of special factors, this Court will proceed with *Abbasi's* two-step analysis.

    1.    **New Context**

Of the three cases in which the Supreme Court has recognized a *Bivens* claim, *Carlson* is the only relevant case to the instant matter. In *Carlson*, the Court recognized an implied damages remedy under *Bivens* for prison officials' failure to provide medical care. *See Carlson*, 446 U.S. at 25; *see also Egbert*, 142 S. Ct. at 1802. The instant case is notably different from *Carlson*. Although both cases involve a federal inmate seeking personal liability under the

Eighth Amendment for injuries sustained while incarcerated, *Carlson* concerned inadequate medical treatment of an illness by BOP personnel, while the instant case concerns prison officials' alleged failure to protect Decedent from other inmates and properly respond to injuries sustained during an attack on Decedent by other inmates. (Doc. 30); *see Carlson*, 446 U.S. at 25. In other words, *Carlson* concerned alleged failure to treat an illness, whereas this case concerns an alleged failure to protect and respond to inmate-on-inmate violence.[1]

Next, the undersigned notes that until recently, the Third Circuit recognized a failure-to-protect *Bivens* claim similar to that raised in this action in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), premised upon the Supreme Court's holding in *Farmer v. Brennan*, 511 U.S. 825 (1994). In *Farmer*, the Supreme Court recognized a prisoner-plaintiff's cause of action under *Bivens* alleging that prison officials were deliberately indifferent to the risk that a transsexual plaintiff would be assaulted by other inmates. *See Farmer*, 511 U.S. at 829-34. The inmates in *Farmer* had been placed in segregation for safety concerns and then transferred to a more dangerous prison and housed in general population where one was later beaten and raped in her cell. *Farmer*, 511 U.S. at 830-31. The plaintiffs had alleged that the prison had a history of

---

[1] The Court is mindful of the fact that Ashley brings her *Bivens* action under both a theory of failure to protect and a theory of failure to provide medical treatment. (Doc. 30). Ashley's claims revolve around the attack on Decedent by other inmates and Defendants' response thereto. (Doc. 30). Courts in the Third Circuit have understood claims based upon such sets of facts as failure to protect claims, rather than the failure to provide medical treatment claims. *See Orange*, 2024 WL 5130841, at *5 (analyzing inmate-on-inmate violence Eighth Amendment claims under a failure to protect theory and rejecting the *Carlson* analogy in such cases); *Lynch*, 2024 WL 3904986 (holding that claims revolving around an assault by other inmates implicates a failure to protect theory of liability). Thus, this Court examines Ashley's claims as failure to protect against and prevent further attack by fellow inmates.

8

sexual assaults and violence, and the Supreme Court remanded the case so the plaintiffs could complete discovery. *Farmer*, 511 U.S. at 847-48.

However, in August 2024, the Third Circuit issued its opinion in *Fisher v. Hollingsworth*. 115 F.4th 197 (3d Cir. 2024). In *Fisher*, the Third Circuit acknowledged that the Supreme Court's holding *Egbert* properly abrogated *Bistrian* and overruled its previous finding that a *Bivens* remedy could proceed in failure-to-protect cases based upon inmate-on-inmate violence. *Fisher*, 115 F.4th at 205 ("we read *Egbert* to require the following: unless a case is indistinguishable from *Bivens*, *Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts. Because *Bistrian* [. . . ] took a more lenient approach than *Egbert*, we now recognize [its] abrogation."). The *Fisher* Court dismissed Eighth Amendment claims based on a failure to protect and noted, "there is no implied constitutional damages action against federal officials who fail to protect prisoners from the criminal acts of their fellow inmates." *Fisher*, 115 F.4th at 206. In the aftermath of *Fisher*, district courts in this Circuit have found that cases involving a failure to protect against and prevent, or respond to, assaults or injuries inflicted upon inmates by other inmates presents a new context under *Egbert*. See *Orange v. Keen*, No. 1:22-CV-01019, 2024 WL 5130841, at *5 (M.D. Pa. Dec. 16, 2024) ("an Eighth Amendment failure-to-protect claim stemming from inmate-on-inmate violence constitutes a new context under *Bivens*."); *Lynch v. Thompson*, No. 1:23-CV-1167, 2024 WL 3904986, at *6 (M.D. Pa. Aug. 22, 2024) (recognizing that a failure to provide follow-up care or medical attention to an inmate after he had been assaulted by another inmate may present a new *Bivens* context); *Henareh v. United States*, No. 3:24CV2094, 2024 WL 5239890, at *3 (M.D. Pa. Dec. 27, 2024) (emphasizing that failure to protect cases present a new context from *Carlson*).

Likewise, this Court finds that the instant case is meaningfully different from *Carlson.* 446 U.S. 14. Even construing Ashley's claim as a failure to treat claim, rather than a failure to protect, this matter still presents new contexts. Although both cases broadly allege deliberate indifference by prison officials, the deliberate indifference claim in *Carlson* arose from a failure to provide asthma care to an inmate decedent who was suffering from asthma and kept in a facility without proper asthma accommodations, against doctor advice, and who prison medical staff treated with contra-indicated drugs. 446 U.S. 14. In this case, by contrast, Ashley alleges that Defendants failed to protect Decedent from attacks by other prisoners or properly respond to attacks to treat injuries and prevent subsequent assaults. (Doc. 30). Unlike the plaintiff in *Carlson*, Ashley does not allege that Defendants acted contrary to doctor's recommendations or prescribed a "known to be inoperative" treatment. (Doc. 30). Additionally, Defendants are corrections officers, rather than medical staff, as was the case in *Carlson*. (Doc. 30, at 2-4). In sum, the Court concludes that Ashley's *Bivens* claims present a new context that is meaningfully different from the claims recognized in *Bivens*, *Davis*, or *Carlson*.

### 2. Special Factors

Having concluded that Ashley's claim presents a new context, this Court must determine whether "there are any special factors that counsel hesitation" in extending *Bivens*. See *Hernandez,* 140 S. Ct. at 743 (internal quotation marks and alterations omitted) (quoting *Abbasi*, 137 S. Ct. at 1857). If a court "ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants," then it should consider whether any such special factors exist. See *Hernandez,* 140 S. Ct. at 743. There may be many special factors, but two are "'particularly weighty': the availability of an alternative remedial structure and separation-of-

powers concerns." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020) (quoting *Bistrian*, 912 F.3d at 90).

First, the Supreme Court has recognized that "when alternative methods of relief are available, a *Bivens* remedy usually is not." *See Abbasi*, 137 S. Ct. at 1863. The alternative remedy need not "afford rights to participation or appeal," because a court should defer to congressional or executive choices in erecting a remedial process, rather than conduct its own independent assessment of government procedures. *See Egbert*, 142 S. Ct. at 1806. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (citing *Abbasi*, 137 S. Ct. at 1858). The BOP's administrative remedy program provides an alternative remedy for claims based upon an inmate's assault by other inmates. *Mack*, 968 F.3d at 321. Although Ashley could not obtain money damages through the administrative remedy program, *see Mack*, 968 F.3d at 321, the fact that the alternative remedy "do[es] not provide complete relief" is immaterial. *Egbert*, 142 S. Ct. at 1804. "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). The Supreme Court does not condition the existence of an alternative remedial structures special factor on whether an inmate actually utilizes the process. Rather, the Court only requires that the process was created to provide an alternative remedy because even an allegedly "inadequate" grievance process can "independent[ly]" foreclose *Bivens* relief from a federal law enforcement officer. *Egbert*, 142 S. Ct. at 1806. The relevant "focus is whether the Government has put in place safeguards to prevent constitutional violations from recurring," not whether the

reviewing Court deems those adequate. *Egbert*, 142 S. Ct. at 1807 (quotations omitted). Here, the BOP administrative remedy program plainly provides such safeguards. *See Egbert*, 142 S. Ct. at 1807 (holding that if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.").

    Second, the separation of powers is another special factor the undersigned must consider. The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 137 S. Ct. at 1857 (citations omitted). "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" because the problems "are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted). The Supreme Court has warned that the BOP, not the judiciary, has the "expertise, planning, and the commitment of resources" necessary for the difficult task of running a correctional facility. *Turner*, 482 U.S. at 84-85. Consequently, the task of prison administration "has been committed to the responsibility of [the legislative and executive] branches, and separation-of-powers concerns counsel a policy of judicial restraint." *Turner*, 482 U.S. at 85. The Third Circuit explained that "[h]eeding the reasoning in *Abbasi*, we must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'" *Bistrian*, 912 F.3d at 94–95 (quoting *Abbasi*, 137 S. Ct. at 1858). Thus, given the array of challenges facing prison administration and the complexity of those problems, "separation of powers concerns counsel a policy of judicial restraint." *Turner*, 482 U.S. at 85.

Having carefully considered the special factors, and mindful of the Supreme Court's instruction that, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy," the undersigned concludes that Congress is better equipped to determine the contours of a damages remedy than the courts. Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Ashley's Eighth Amendment claims of deliberate indifference, the undersigned will not do so here. *Egbert*, 142 S. Ct. at 1803 (citing *Hernandez*, 140 S. Ct. at 743).

This case presents a truly tragic set of facts, but this Court is bound by the Supreme Court's decision in *Egbert* and the Third Circuit's acknowledgment of *Egbert's* impact on *Bistrian* and *Farmer*. *Rinaldi v. United States*, No. 21-2298, 2024 WL 4579246, at *2 (3d Cir. Oct. 25, 2024) (stating that when a case is distinguishable from *Bivens*, *Davis*, or *Carlson*, *Egbert* holds that the courts "may not create [a damages remedy], no matter how desirable that might be as a policy matter.'") (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)). Accordingly, Defendants' motion to dismiss is **GRANTED**, as Ashley's Eighth Amendment claims fail to rise to a cognizable claim for relief under *Bivens* and its progeny.[2]

B.  FTCA C‌LAIM

Defendants next contend that Ashley "failed to timely file the required administrative claim." (Doc. 51, at 55). Defendants provide a declaration from Michael Funt ("Funt"), an attorney employed by the BOP, who certified that Ashley filed her administrative complaint

---

[2] Defendants also move to dismiss on the grounds that they are entitled to qualified immunity. Because the Court grants the motion to dismiss on other grounds, it will not address the qualified immunity argument.

13

on August 16, 2024, nearly three years after Decedent's death on September 28, 2021.³ (Doc. 51-1, at 1-2; Doc. 53-1). Funt describes multiple defects in the administrative complaint aside from timing, including the following documented issues: "failure to sign the tort claim, failure to identify a date on which the negligence allegedly began, failure of the attorney to provide proof of representation of Lyasia Ashley, failure to provide proof that Lyasia Ashley is authorized to represent the estate, and failure to include Lyasia Ashley's signature." (Doc. 51-1, at 1-2). Ashley alleges that "no claims accrued in this matter until *at least* January 2023 because Plaintiff did not have reason to know of the negligence of any federal employees until at least that time. (Doc. 30 ¶ 57; Doc. 53, at 9). As such, Ashley argues that the true date of expiration of the statute of limitations to file an administrative complaint would have been January 2025, and her administrative complaint, filed in August 2024 was thus timely. (Doc. 30, ¶¶ 57-58; Doc. 51-3; Doc. 53, at 9-10). However, Ashley fails to address the defects with her administrative complaint, including her failure to sign it. (Doc. 53).

"A plaintiff cannot institute an FTCA suit until he or she presents the claim to a federal agency and receives a final decision on the claim." *Accolla v. U.S. Gov't*, 369 F. App'x 408, 409-10 (3d Cir. 2010) (citing 28 U.S.C. § 2675(a)); *see also McNeil v. United States*, 508 U.S. 106, 112 (1993). This requirement under the FTCA "is jurisdictional and cannot be waived." *Rosario v. American Export-Isbrandtsen Lines, Inc.*, 531 F.2d 1227, 1231 (3d Cir. 1976). Additionally, 28 U.S.C. § 2401 imposes a two-year time restraint for claims to be brought to

---

³ By challenging the timeliness of Ashley's administrative complaint, and thus, her having exhausted administrative remedies, Defendants bring a factual challenge to the Court's subject matter jurisdiction. (Doc. 51, at 14, 55). When reviewing a factual attack, a court may consider evidence outside the pleadings. *See U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

the appropriate federal agency. *See also Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 270 (3d Cir. 2006). "Absent grounds for equitable tolling, a plaintiff's failure to comply with these timeliness requirements bars his recovery in federal court." *Boyle v. United States*, No. 1:22-CV-01936, 2024 WL 1604644, at *8 (M.D. Pa. Apr. 12, 2024) (citing *Sconiers v. United States*, 896 F.3d 595, 599-60 (3d Cir. 2018)) (citing *United States v. Wong*, 575 U.S. 402, 420 (2015)). The Third Circuit has held that equitable tolling, especially in FTCA cases, should be used sparingly. *See D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020). Equitable tolling may be appropriate:

> "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting ... her rights; or (3) where the plaintiff has timely asserted ... her rights mistakenly in the wrong forum."

*D.J.S.-W.*, 962 F.3d at 750 (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)) (citations omitted).

Ashley is not entitled to equitable tolling and none of the situations in which tolling is appropriate are present here. While Ashley argues that the true date of accrual is January 2023, because that is when she obtained documentation confirming Defendants' actions or inactions that may have constituted negligence, she fails to explain or identify the documentation to which she refers. (Doc. 53, at 9-10). Further, an accrual date arrives when "the plaintiff has actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *McLaughlin v. Bayer Essure, Inc.*, 2019 WL 1382710, at *5 (E.D. Pa. Mar. 27, 2019). Here, Ashley knew of Decedent's death, and given that she alleges no other health issues or reasons that Decedent would have died suddenly, she could have understood that some significant harm was linked to another's

15

conduct in relation to Decedent's death far before January 2023. (Doc. 30). Ashley also does not argue that she filed her complaint in the wrong forum or that Defendants misled her regarding her cause of action. (Doc. 30; Doc. 53). Because Ashley failed to exhaust her administrative remedies prior to the expiration of the statute of limitations and has not shown that she should be entitled to the extraordinary remedy of equitable tolling, Ashley's FTCA claims will be dismissed. Accordingly, Defendants' motion to dismiss the FTCA claims in the amended complaint is **GRANTED**. (Doc. 46).

### C. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, Ashley's claims fail because of this Court's duty not to expand *Bivens* except in very limited circumstances that do not apply here and for her failure to exhaust administrative remedies properly. Thus, she will not be able to cure the fundamental deficiency in those claims. As such, the Court will not grant leave to amend. *See Agedah v. U.S. Dep't of Homeland Sec.*, No. 3:20-CV-00868, 2021 WL 6845247 (M.D. Pa. Dec. 20, 2021) (denying leave to amend a *Bivens* and FTCA claim where this Court found it lacked jurisdiction), *report and recommendation adopted*, No. 3:20-CV-868, 2022 WL 386093 (M.D. Pa. Feb. 8, 2022).

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. (Doc. 46).

16

Ashley's amended complaint is **DISMISSED**. (Doc. 30). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

BY THE COURT:

Dated: June 16, 2025            *s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **United States District Judge**